We'll move now to Appeal Numbers 25-2732 and 25-2976, Aubert v. Poast, and we'll begin, Your Honours, Chief Judge, Judges, may it please the Court, Stephen Cullen, I represent Dr. Yves Aubert. What we are moving to now is Norway. We have Norwegian children. They were born in Norway. There's a Norwegian case, and the contention of my learned friends for the mother is that one of the elements of Dr. Aubert's case did not meet the required standards, that in some way Dr. Aubert had no rights whatsoever under Norwegian law to the children, nothing. I didn't understand their position to be that. I understood it to be that with respect to the younger daughter, there is no custodial right, which is what's relevant under the Hay Convention. Yes, and that term, Judge Hamilton, right of custody, is somewhat of a misnomer under the Treaty because, as Justice Kennedy explained in Abbott, even inchoate rights, even not fully formed rights, and as the Chief Judge says in Palencia in the Eleventh Circuit, even a duty, any sort of obligationes, to quote Justinian, any sort of obligation qualifies as a right. And, Judge Hamilton, I believe you were in the Garcia versus Pinola panel, and if I recall correctly, in that case, an issue of whether an amorphous Mexican concept called patria potestas qualified as a right of custody. And what this circuit said in Garcia was, we look in the widest possible way that we can to bring in any sort of right or duty so that the second element of Article 3 is met. Article 3, we meet in spades that Norway was the habitual residence, Dr. Robert was attempting to have contact with his children, and what my learned friends say is that he had no rights to custody whatsoever to the younger child. Mr. Cullen, with respect to APA, the Norway Supreme Court addressed a similar situation and recognized that the Children's Act gave the father a right to notification opportunities for input prior to the children being moved abroad, but held that even though the mother violated those rights, because she had sole parental responsibility, her departure with the child to another country was legal. Does that, well, why wouldn't that make it clear that Dr. Robert did not have the power to veto the relegation of the child in this situation? Yes, Your Honor, and that case is in the appendix starting at page 204, and the Norwegian cases anonymize the names of families, so it's 2011-1564. Now, Judge, what that case was addressing was whether Norway still had jurisdiction over the children, even though they had already left for Australia. Here, what we say is Dr. Robert was entitled to notice before the relocation happened. Why? Because by having notice, he had the opportunity to go to court and ask the court not to permit the removal. The very helpful case, Judge, that you alerted me to there, the 2011 case, what's important for our case is the Supreme Court of Norway in a five-judge panel held that you must look at section 40, 42A, and 46 together. What the mother would have you do is only look at section 40 of the Children Act in Norway. When you look at all three together, Dr. Robert is clearly entitled to notice before the mother relocated the children to Wisconsin. He didn't get that notice, and what Justice Kennedy explains in Abbott is that is exactly the type of inchoate rights that the left-behind parent has. Why? Because the wrongfulness, the wrongful retention of the children in Wisconsin brought to light the rights that he had under Norwegian law. Article 40, 42A, and 46 admonish the Norwegian system to look very carefully when there is a concern that by going overseas, the left-behind parent will never have contact with his children again, which is exactly what happened here. If we hold that Obert has no right to the return of APA, but he has the right to the return of LPA, what is Dr. Obert's position in that circumstance? Does he plan to exercise his right as to LPA alone, in which case we need to review whether the grave risk exception prevents her return to him, or is he still of the position that the sisters should stay together? Yes, Your Honor. So he was presented with that Hobson's choice by the lower court. It's not a Hobson's choice, it's the choice this law may force upon him, and on the mother. But the rationale the lower court made to say, I'm not returning one child. What's his position? His position is, it is not a grave risk to separate the children, although he would prefer the children not be separated. So he's taking a different position than he did in the district court. No, he was asked, would he separate the children, and he said, I would not. What he did not say is what the lower court found. The lower court, without any evidence whatsoever, said there was a clear and convincing burden established that there was a grave risk of separating the children. There was no evidence presented in the lower court about those points at all. I do want respectfully to reserve two minutes for rebuttal. We're going to give you some rebuttal time, so don't worry about that. I want to ask about the provisional remedy. That strikes me as time sensitive. It looks like the district court issued an indicative ruling on this point. There was obviously no interstitial motion to remand that particular question from our court to the district court. Are you asking that there be a bifurcated ruling, a ruling on the provisional remedy prior to the ruling on the rest of the case? Yes, Chief. Let me submit why that is appropriate. 22 U.S.C. 9004, the provisional remedies section of the federal statute, starts with this crucial phrase, in furtherance of the objectives of Article 7b of the treaty, and 7b of the treaty, which is the supreme law of the land, and is the most successful treaty in the history of treaties of the United States. Over 200 countries are states parties to this. Extraordinary. It says you must advance all aspects of this case in the best interests and welfare of the children. And we submit it is clearly in the best interests of the children to have contact with their father, because the longer he doesn't have contact, that time itself unduly influences and diminishes. I think we understand the human point here. Could you address the mother's and the district court's jurisdictional objections? Yes. The problem with the lower court's analysis of the provisional remedies once the case was removed is that is not what the federal statute says. The federal statute says that... The problem is that Rule 62 and Federal Rule of Appellate Procedure 8 allow the district court to provide this provisional remedy and modify things while the case is pending on appeal. I'll be interested in the mother's response to that. Thank you. You say that if we remand the case, the maturity of the older daughter should not be revisited. Why not? Yes, because the court made findings that were raised for the first time in the appellee's brief. It was not an issue that was appealed. You don't have to raise alternative grounds to lose rights by not making those sorts of arguments. Time has passed on. The girl is older now than she was when the district court made its decision. Are we supposed to ignore that passage of time? The answer to that is twofold. First of all, there were certain absolutist positions when we come to remand. If either child was 16, unfortunately, that's the end of the case. But what happened with the older child is there was a full investigation by the court. He interviewed them, and he made a finding that neither child has reached the age and degree of maturity to object to the return to normal. Yes, I know. The question is, you seem to take the position that the law requires us to ignore the passage of time if we were to remand. What's the justification for that? I do want to say this as humbly as I can. The problem is the time that these cases are taking in the United States is not fair to the left-behind parents. We're supposed to do these cases in six weeks. That's a fine global criticism, but today, January 30, 2026, this is the situation we now face. What is it about the law that would prohibit consideration of the older girl's maturity if we were to remand, as you request? Nothing. Thank you. Nothing. But the passage of time that has taken this case over a year to get where we just are today has to be taken into account. What are the parents' respective immigration statuses in Norway? Yes, that's covered by the unrebutted, uncontroverted testimony of the Norwegian expert. The children and the mother have an absolute right to reside in Norway under Article 8 of the European Convention on Human Rights because they have an absolute right to family life, and the children are entitled to reside in Norway, and therefore the mother is entitled to reside in Norway. What is the father's immigration status in Norway? He's Swiss with the right to live and reside in Norway. Thank you. Judge Rovner, did you have any questions at this point? I did, but I think it was answered. Thank you. Thank you. Mr. Cullen, we'll be giving you some rebuttal time on the back end. Thank you. Thank you. Mr. Monaghan, we'll move to you now for argument on behalf of the appellee. Good morning, Your Honors. Ryan Monaghan on behalf of Appellee Laurie Post. There are three facts which the parties agreed to before the appeal that drive the outcome of the district court's decision. The first, from birth to present day, Ms. Post has been designated as the solely responsible parent for APA under Norwegian law. The second, before Ms. Post chose to keep APA and LPA in the United States, Mr. Robert had never sought to change the parental relationship status as to APA. And third, APA and LPA have a special bond and a close, loving relationship. The parties still agree to that, such that they should not be separated from each other. What is the mother's position on the possible separation of the children? The mother's position is that they should not be separated. Including if we agree with Dad that the removal of the older daughter was a violation and that that needs to be resolved in Norway. And, Your Honor, I frankly do not have the answer to that exact question right now. But my understanding is Ms. Post also agrees with the loving and close relationship and would not want the children to be separated. Thank you. You know, you asserted or you have asserted that the grave risk exception was raised in the Second Affirmative Defense at Docket 62. But all of the allegations in that defense relate to claims that Dr. Aubert is abusive and poses a danger to LPA. Nothing in that defense addresses harm related to LPA separation from APA. How can the court have properly considered an argument that the parties never made and that they never developed a factual record to support? At an absolute minimum, isn't a remand required to allow the parties to address that argument to perhaps bring in expert testimony, something? What we have is the judge having two hours with these young children and making a decision. Thank you, Judge Roper. I'm going to address the first part, which I think is, was this raised below? And you're correct that the pleading or response to the petition was specifically addressing the abuse allegations. However, it broadly raised the grave risk defense to the child and or children. And I say that because as part of this case from the outset was the potential two different results that could be reached by the district court. And the district court honed in on that when he asked Dr. Aubert, what would you do if I reach the two different legal results here? And he said, I would not insist on their separation. He also said that on direct examination, that the children should not be separated. And he said it in the context of the harm it would do to them. He said that they have a loving relationship. They have a special bond. And I would not insist they've lost so much already. And that is more than adequate evidence to support the factual finding of a grave risk of harm. I'd like to point to… But the mother didn't offer evidence on that particular exception, the grave risk exception. On whether the children should be separated. And, Your Honor, because the order of the proceeding was Dr. Aubert said, I would not insist on the separation of the children. And that to me is the admission of a party opponent on the stand stating that the children should not be separated. And that drove the outcome of the district court's decision. That sounds like more of a kind of estoppel theory than a grave risk defense based on, for example, expert evidence and the like. There are two components to it. There is this estoppel component, which is Dr. Aubert said he would not separate the children. And the district court relied on that to say the parties agree and the court agrees that the children should not be separated. Could I ask you, Mr. Monahan, to address this problem of interim supervision? Sorry, what problem? Well, the district judge thought he did not have jurisdiction. It seems to me pretty clear under Appellate Rule 8A and Civil Rule 62D that he does. That he has the power to modify injunctions even while the case is on appeal. And, Your Honor, so both those rules have to be cabined by the statutory provision that this was brought under, which is 903 and 904. And 904 says that the district court cannot implement the provisional remedies after the final disposition of the petition. But it hasn't been finally resolved because there's the appeal. And, Your Honor, the important context of 904 is that it refers to the 903-03-B petition. And the only courts that can hear that petition are the district court and the courts of the state. Under that, it is only the district court's disposition of the petition that matters. So it sounds like you're saying we should construe the statutes in such a way as to undermine the goals of the Hague Convention. No, Your Honor, because the Hague Convention is focused on the resolution of the petition in an impromptu resolution by the district court. And also on the interim status, correct? And that interim status is resolved upon resolution of the petition. Would you all be prepared to go into the district court next week to address visitation while we consider the larger case? I would have to consult with counsel on that. It might be a good idea. We will respond. To be prepared to do that. Thank you, Your Honor. And, Judge Rovner, I wanted to point to one more aspect of the record that I think is important on the separation point. And that is Dr. Favaro, Dr. Aubert's expert, testified to the loving and close relationship of the children. And that is expert testimony that can support the district court's conclusion, which is reviewed for clear error here, on the grave risk of psychological harm. I would point the court to the Southern District of New York's decision in Ermini, which was affirmed by the Second Circuit. And that had similar facts as the separation of the children. There was testimony of the loving and close relationship, and that formed the conclusion as the grave risk of psychological harm. Could you address, along those lines, the First Circuit's decision in Whalen? Sure, Your Honor. And appellants, in my view, overstate Whalen. Whalen stands for the conclusion that there is no per se harm from separating children. But here, when there is a factual record supporting that conclusion, we're not relying on a per se separation being harmful of those children. We're relying on the loving and close relationship that Dr. Aubert testified to, Dr. Favaro testified to, and the insistence that these children should not be separated. I'd like to briefly touch on the rights of custody. And in our view, this post has been designated as the solely responsible parent for APA under Norwegian law. The Children's Act is clear that she is conferred the rights of custody as used under the Hague Convention. And Dr. Baird? Do you agree that her retention of the older daughter was wrongful under the Convention? Because of the joint parental responsibility status, yes, Your Honor. As to APA, that joint parental responsibility status did not exist. And I would like to refer what Judge Rovner referred to, which is R.T. 2011-1564. And, Judge Rovner, I believe your analysis is exactly right. What the Norwegian Supreme Court decided there is that the mother's relocation, when the father only had rights of access, only breached the duty to notify. And the Norwegian Supreme Court is clear that there's no sanctions for the breach of a duty to notify. Mr. Cullen has suggested that that duty to notify is a naexiate right. That is the farthest reach a naexiate right would ever have gone. Abbott is very clear that it's actual decision-making authority over the child's relocation. And that is a naexiate order by the Chilean court there. Norwegian law simply does not have that type of naexiate right for a non-responsible parent who only has rights of access. And, Your Honors, it bears noting that the result of the petition is that two U.S. citizens stay, and the mother, who is also a U.S. citizen, stay in the United States. And resolution of the custody dispute occurs in Dane County, Wisconsin. We ask that you affirm the court. In the event of a remand, we do ask for a remand for further factual findings as to the maturity objection. At this point, we are now nearing eight months since LPA was first assessed, and she deserves to be assessed again under the maturity objection. Thank you, Mr. Monaghan. Mr. Cullen will recognize you for rebuttal argument, two minutes. Thank you very much, Chief. Now, Judge Hamilton, you mentioned Wayland. I mentioned Wayland because it was United States citizens. Everyone in Wayland was a U.S. citizen. Citizenship has nothing to do with private conventions under the Permanent Bureau. Nothing. There are legions of Hague cases where U.S. citizen children are returned to other countries. It happens all the time. The touchstone of this convention is habitual residence. It was decided in the drafting of it in the 1970s that citizenship would have nothing to do with this treaty. Now, what my learned friend is suggesting is that you take a very narrow view of rights of custody. That is not what Justice Kennedy says you are to do, but also it's not what the Norwegian Supreme Court finds with respect to Section 46. The key three paragraphs in Norway, all their appellate decisions have paragraph numbers. If you could please look in the appendix at page 210 to paragraph 34, 35, and 40. The Norwegian Supreme Court says moving abroad with the child is thus in the core area of the duty to notify. That is an inchoate right that Dr. Aubert has that was violated when the mother wrongfully removed and retained the children. Why? Because above in paragraph 34, the concern in Norway is that the taking parent will make it impossible or significantly more difficult to exercise access. That's exactly what happened. And lastly, the Norwegian court was seized with jurisdiction over these children. It had a hearing in February 2024. The parties consented to an order that Dr. Aubert was to have access. He got the first two. They went extremely well, and then the mother removed the children. Thank you, Mr. Cullen. Thank you, Mr. Monaghan. The case will be taken under advisement.